UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-CR-20767-KING(s)

UNITED STATES OF AMERICA

v.

MARGARITA ACEVEDO, et al.,

      Defendants.
_____/

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD DEPARTURE

Margarita Acevedo entered a plea of guilty to conspiracy to commit health care fraud and conspiracy to pay illegal health care kickbacks, pursuant to a plea agreement, on April 7, 2011. In the plea agreement, the parties agreed to a United States Sentencing Guidelines (USSG or Guidelines) offense level of 34, which corresponds with a recommended prison sentence of 151-188 months. The United States respectfully requests that the Court sentence the defendant on the low end of that range and hereby moves pursuant to USSG Section 5K1.1 for a reduction of 40% because Ms. Acevedo has substantially assisted the government. Accordingly, the United States respectfully requests that the Court enter a sentence of 91 months and restitution in the amount of $72,687,629.

## FACTUAL SUMMARY

American Therapeutic Corporation (ATC), its management company, Medlink Professional Management Group, Inc., their sister company the American Sleep Institute (ASI) and their owners and operators engaged in an eight-year, $205 million conspiracy to defraud the Medicare program. The vast majority of the $205 million billed to Medicare consisted of claims for partial hospitalization program (PHP) services through ATC. To obtain patients for ATC's

1

PHP program, the owners and operators of ATC paid kickbacks to patient brokers, halfway house owners, and assisted living facility owners, who, in return would provide patients with valid Medicare numbers to ATC.  The patients would then attend ATC's facilities and purportedly receive PHP treatment.  The vast majority of patients for whom ATC submitted claims to Medicare for PHP treatment did not need the treatment, and even those who might have needed it, did not get appropriate PHP treatment.

Margarita Acevedo was the lead marketer for ATC, Medlink, and ASI.  Acevedo joined the scheme in mid 2005 and learned about the illegality of the scheme in late 2005.  At first, she worked for Duran as a marketer, but in time she became the chief marketer with a team of people working for her, all in an effort to pay the hundreds of thousands of dollars per month in kickbacks required to keep the scheme running.

PHP treatment is a highly specialized treatment for severely mentally ill individuals who are in acute phases of their diseases.  As the name suggests, a partial hospitalization program is designed to treat patients whose mental state does not permit them to function in an out-patient setting, and who would otherwise need to be hospitalized if they were not at the PHP.

The patients who attended ATC as a result of the kickbacks were overwhelmingly either elderly residents of assisted living facilities who had dementia, Alzheimer's disease, or brain damage, or substance abusers who were too desperate for treatment to refuse when their corrupt halfway house owners required that they attend ATC.

The treatments that ATC provided were also not appropriate for a true PHP program, even if the patients had been severely mentally ill in acute phases of their diseases.  The treatments were not individualized to the patient and were not designed and monitored by doctors and therapists to cause improvement in the patient's condition.  To cover up the true

nature of ATC, doctors and therapists, under the direction of and with the participation of the defendants, fabricated medical records to make it appear that the patients needed, and received, PHP treatment.

The defendants and their co-conspirators made some extra money by opening ASI, where they would perform diagnostic sleep studies on patients, 76% of whom also attended ATC. Just like at ATC, Acevedo and her team recruited patients to ASI through the payment of kickbacks for people who had no need for sleep studies.

To support the massive kickback operation that fed the patient streams at ATC and ASI, the defendants, including Acevedo, and their co-conspirators engaged in a highly sophisticated money laundering scheme. The first step of the money laundering scheme often occurred when ATC and ASI each paid millions of dollars in Medicare reimbursements to Medlink. From Medlink, the defendants turned many of those millions into cash to pay kickbacks. They also laundered Medicare funds directly out of the ATC and ASI accounts. Acevedo opened two companies, Ace Catering and VIU PR, whose sole purpose was to launder money for Medlink and ATC. She also took checks for fake employees multiple times per month to a Lazaro Acosta, who owned a check cashing store, to turn those checks into cash. She even, on a few occasions, participated in endorsing the signatures on the backs of the checks that she took to the check cashing store.

Acevedo entered a plea agreement with the government and the Court accepted her plea on April 7, 2011. Pursuant to the plea agreement, the defendant pled guilty to Counts 1 (conspiracy to commit health care fraud) and 13 (conspiracy to defraud the United States and to pay and receive illegal health care kickbacks) of the Superseding Indictment in which she is charged, *United States v. Duran et al.*, 10-CR-20767-KING(s). The United States has agreed to

dismiss the remaining charge against her, Count 14 (conspiracy to commit money laundering), after sentencing.

## GUIDELINES CALCULATION

In Acevedo's plea agreement, the defendant and the government agreed to a USSG offense level of 34. The United States Probation Office recommends that the total USSG offense level for Acevedo is 34. The United States concurs with all of the calculations of the United States Probation Office, and they are consistent with the plea agreement Ms. Acevedo signed with the government.

The United States's calculation of the Total Offense Level is as follows:

| | | |
|---|---|---|
| (1) | Base Offense Level, § 2B1.1(a)(2): | 6 |
| (2) | Loss (Greater than $100 million but less than $200 million), §2B1.1(b)(1)(N): | 26 |
| (3) | Sophisticated Means, §2B1.1(b)(9)(C): | 2 |
| (4) | Manager Role in Offense Involving More Than Five Participants, §3B1.1(b): | 3 |
| (5) | Acceptance of Responsibility, §3E1.1(a) | -3 |

TOTAL OFFENSE LEVEL: <u>34</u>

Sentencing Guideline Range:                                                                        151-188 months

The basis for these calculations is set forth below.

**(A) Amount of intended loss**

The intended loss in this case is appropriately determined by the amount the defendants and their co-conspirators billed to the Medicare program during the course of the conspiracy, $205,225,560. Ms. Acevedo, however, did not join the conspiracy until late 2005, so the loss attributed to her from the time she joined the conspiracy to the end of the conspiracy is roughly $170 million. The Probation Office recommends that the loss amount for Acevedo is greater

than $100 million but less than $200 million.  The United States and the defendant agree with the recommendation of the Probation Office.

Pursuant to Section 2B1.1 of the Guidelines, the base offense level is increased by the <u>greater</u> of the actual loss or the intended loss.  USSG §2B1.1.  The commentary to the Guidelines provides that the proper loss amount for purposes of calculating the loss enhancement is "the greater of actual loss or intended loss."  U.S.S.G. § 2B1.1, comment (n.3(A)).  Under the Patient Protection and Affordable Care Act ("PPACA"), the aggregate dollar amount of fraudulent bills submitted to a government healthcare program [in this case more than $205 million] is *prima facie* evidence of the amount of the "intended loss."  PL 111-148, 2010 H.R. 3590 §10606(a)(2)(B).  The Eleventh Circuit has affirmed loss calculations based on the full amount billed to Medicare, even after finding that the doctor knew or reasonably should have know she would only receive 80% of what she billed to Medicare.  *United States v. Hoffman-Vaile*, 568 F.3d 1335 (11th Cir. 2009).  The Probation Office has appropriately calculated the loss amount here.

**(B) Sophisticated means**

A two-level enhancement for offenses involving "sophisticated means" is appropriate in this case.  The Probation Office recommends that, pursuant to the USSG, the "sophisticated means" enhancement should apply.  The government and the defendant agreed to this enhancement in the plea agreement.  The ATC scheme spanned eight years, seven facilities, involved hundreds of employees, assisted living facility owners, halfway house owners, patient brokers, and money launderers, generated and paid out hundreds of thousands of dollars in kickbacks monthly, and evaded detection for years.  Ms. Acevedo both knew of many of the

sophisticated aspects of this crime and personally participated in some of them.  The Probation Office correctly applied the enhancement.

### (C) Managerial Role

A three-level adjustment for a defendant who was a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive" is appropriate for the defendant. USSG §3B1.1(b).  The Probation Office recommends that, pursuant to the Guidelines, a three-level enhancement should apply.  The government and the defendant agree and it is provided for in the plea agreement. This massive scheme involved hundreds of employees and also hundreds of assisted living facility and halfway house owners.  The scheme was also "otherwise extensive," for many reasons, including that Duran and Valera used thousands of unwitting patients as props in this scheme.  *See* USSG §3B1.1(a), Application Note 3 ("[A] fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.").  Ms. Acevedo occupied a clear managerial role.  She was not one of the masterminds or ringleaders, but from late 2005 forward, she managed the kickback operation, an integral piece of this scheme.  She had employees who worked for her in paying the kickbacks and she managed the payments to hundreds of assisted living facility and halfway house owners.

### (D) Acceptance of Responsibility

Guidelines Section 3E1.1 provides for decreases of up to three levels for acceptance of responsibility.  The United States hereby moves for full credit to Ms. Acevedo for all three levels.  *See* USSG § 3E1.1.  The defendant has accepted responsibility for her crimes in many debriefing sessions with government agents, in meetings with the Probation Office, and publicly in this Court during the trial of co-conspirator Negron.

**DOWNWARD DEPARTURE BASED ON
SUBSTANTIAL ASSISTANCE TO AUTHORITIES**

Section 5K1.1 of the Guidelines provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed the offense, the court may depart from the guidelines." USSG § 5K1.1.  The defendant has provided substantial assistance in the investigation and prosecution of multiple other persons.  Accordingly, the United States moves pursuant to Section 5K1.1 of the Guidelines for a downward departure of 40%.

The Court had its own opportunity to judge part of the defendant's substantial assistance when she testified at length during the trial of co-conspirator Judith Negron.  The United States will more fully advise the Court about Defendant Acevedo's substantial assistance at the sentencing hearing.  The defendant's assistance is also ongoing, and the United States may file a motion with this Court under Federal Rule of Criminal Procedure 35 to further reduce the defendant's sentence after her continued cooperation is complete.

## **RECOMMENDATION**

The United States respectfully requests a sentence of imprisonment for Defendant Acevedo of 91 months. The United States also requests that the Court impose a three year term of supervised release and require the defendant to pay restitution, jointly and severally with her co-conspirators, of $72,687,629.

                        Respectfully submitted,

                        WIFREDO FERRER
                        UNITED STATES ATTORNEY

By:        /s/
                        Jennifer L. Saulino
                        Trial Attorney
                        U.S. Department of Justice
                        1400 New York Avenue, NW
                        Washington, DC 20005
                        Phone: 202-445-9674
                        Fax: 202-514-7021
                        Jennifer.Saulino@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 13th day of September, 2011, I hereby certify that I have electronically filed and served this document using CM-ECF.

                                           _____/s/_____
                                           JENNIFER L. SAULINO
                                           Trial Attorney
                                           United States Department of Justice
                                           Criminal Division, Fraud Section
                                           1400 New York Ave., NW
                                           Washington, DC  20005
                                           Tel: (202) 445-9674 (mobile)
                                           Jennifer.Saulino@usdoj.gov